# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JUSTON WALTRIP, NATHANIEL
COOLEY, JAMES ACEVEDO, and
MELVIN SANCHEZ, on behalf of
themselves and others similarly situated,

       Plaintiffs,

v.                                No. 1:24-cv-00672-SMD-KK

TRANSWOOD LOGISTICS, INC.,
TRANSWOOD, INC., and
TRANSWOOD CARRIERS, INC.,

       Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND GRANTING PLAINTIFFS' MOTION TO AMEND

**THIS MATTER** is before the Court on Plaintiffs' Motion for Class Certification (Doc. 35 ("Pls.' Mot. for Class Cert.")) and Motion to Amend the class certification motion (Doc. 48). Defendants TransWood Logistics, TransWood, Inc., and TransWood Carriers (collectively "Defendants") responded to both motions. Docs. 44 ("Defs.' Resp.") & 54. Plaintiffs replied to the class certification response. Doc. 52. Upon careful consideration of the parties' filings and the relevant law, the Court hereby **GRANTS** Plaintiffs' motion for class certification as to the New Mexico Minimum Wage Act and quantum meruit claims. The Court **DENIES** Plaintiffs' motion for class certification with respect to the Fair Labor Standards Act claims. The Court **GRANTS** Plaintiffs' motion to amend.

**BACKGROUND**

Defendants operate two crude oil sites in New Mexico, one in Hobbs and one in Artesia, and hire truck drivers to haul oil from these sites to various distributors throughout the state. Pls.' Mot. for Class Cert. at 8. Rather than pay their drivers an hourly rate, Defendants pay truck drivers based on their mileage and barrels hauled. Defs.' Resp. at 2; Doc 35, Ex. 1 ("Geiger Dep.") 13:1-17. But Plaintiffs assert that they to do more than just haul oil; they also load and unload deliveries, spend time waiting at sites, and test the oil. Pls.' Mot. for Class Cert. at 8. Plaintiffs represent that because they are paid per mile and barrels hauled, they are not compensated for the time spent on these additional tasks. *Id.* They further allege that they typically work more than forty hours per week, yet Defendants fail to pay them overtime. *Id.*; Geiger Dep. 14:23–15:3.

Plaintiffs bring suit under the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA"). 29 U.SC. § 206; N.M. Stat. Ann. § 50-4-19. First, they claim that Defendants misclassified them as exempt from the FLSA and NMMWAs' overtime provisions and, consequently, failed to properly compensate them. Doc. 35 at 26–27. Second, Plaintiffs allege that they were required to complete tasks for Defendants' benefit that were not counted towards their hours. Plaintiffs aver that this uncompensated labor not only violated state and federal law but unjustly enriched the Defendants. *Id.* at 35. They now seek to certify a class of all of Defendants' current and former truck drivers who worked over forty hours in at least one week in New Mexico within the three years preceding July 1, 2021 (the date Plaintiffs filed suit) and were not paid one and one-half times their regular rate of pay for the hours worked in excess of forty hours. Pls.' Mot. for Class Cert. at 8 (citing Fed. R. Civ. P. 23). The proposed class would assert claims under the FLSA, NMMWA, and for quantum meruit. *Id.* at 8. Plaintiffs estimate that the class would encompass approximately 100 drivers. *Id.* After filing their certification

motion, Plaintiffs moved to amend it and include additional documentation that had been released later in discovery. Defendants oppose certification and amendment. *See* Defs.' Resp. at 1–6; Doc. 54. Defendants oppose amendment on the same basis they oppose certification—that Plaintiffs have not met the requirements of Rule 23—but do not raise any concerns of prejudice or procedural inadequacies.[1] Doc. 54 at 2. Because the Court finds certification to be appropriate, it grants the motion to amend.

### LEGAL STANDARD

Before stating the legal standards relevant to Plaintiffs' motion, the Court addresses some apparent confusion over FLSA claims and Rule 23 class actions. As stated above, Plaintiffs seek recovery under the FLSA and NMMWA. Defendants point out in their response that FLSA claims cannot be brought as a Rule 23 class action. Defs.' Resp. at 5. Plaintiffs disagree. They argue that Tenth Circuit has never held "that an FLSA claim cannot be certified pursuant to Rule 23." Pls.' Reply at 3. The Tenth Circuit has likely never announced this principle because it is an obvious consequence of the conflict between Rule 23's opt-out scheme and the FLSA's opt-in scheme. Section § 216(b) of the FLSA permits "any one or more employees" to maintain an action to recover unpaid overtime wages "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To participate in a § 216(b) collective action, an individual must "give his consent in writing" and file that consent with the court where the action is brought. *Id.* Rule 23, however, binds all class members to the case's judgment unless they explicitly remove themselves from the action. Fed. R. Civ. P. 23(c)(2). "Because of the fundamental, irreconcilable

---

[1] Unlike in their response to Plaintiffs' motion for class certification, Defendants' response to Plaintiffs' motion to amend does not assert that Plaintiffs have failed to meet Rule 23(a)'s numerosity requirement. Doc. 54 at 2 ("Plaintiffs have failed to establish the prerequisites or Rule 23(a)—commonality, typicality, adequacy of representation—and have not shown that common issues predominate as required under Rule 23(b)(3))."). It is unclear whether this omission was intentional, but the Court considers numerosity to be contested as set out in Defendants' first response.

3

difference between the class action described by Rule 23 and that provided for by FLSA § 16(b) . . . [i]t is crystal clear that § 16(b) precludes pure Rule 23 class actions in FLSA suits." *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (per curiam); *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1296 (11th Cir. 2003). Thus, § 216(b) is "the exclusive mechanism to certify an FLSA collective action." *Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo Cnty.*, 310 F.R.D. 631, 662 (D.N.M. 2015).

The cases Plaintiffs cite do not show otherwise. Instead, these rulings merely affirm that collective and class actions can proceed *together* in one suit. But having an FLSA collective proceed alongside a class action is markedly different from bringing an FLSA claim under Rule 23. *Pruess v. Presbyterian Health Plan, Inc.*, 745 F. Supp. 3d 1218, 1244 (D.N.M. 2024) (rejecting argument that plaintiffs cannot maintain an FLSA collective and an MWA class action in one suit). The first scenario is commonplace;[2] the latter is unworkable. *Lusardi v. Lechner*, 855 F.2d 1062, 1068 (3d Cir. 1988) ("Courts have generally recognized that Rule 23 class actions may not be used under FLSA § 16(b)."). The Court finds that Plaintiffs have failed to correctly move for a § 216(b) collective on the FLSA claims and that Defendants have not had an opportunity to respond in full to a § 216(b) motion. The Court therefore declines to move to the second stage of § 216(b) certification. Plaintiffs may separately file for § 216(b) certification.

I.      Class Actions Under Federal Rule of Procedure 23

To obtain class certification under Rule 23 for their NMMWA and unjust enrichment claims, Plaintiffs must meet each of the following four elements: numerosity, commonality,

---

[2] The D.C., Second, Third, Seventh, Ninth, and Eleventh Circuits have found that an FLSA collective action and a Rule 23(b)(3) state-law class action may be maintained in the same proceeding. *See Calderone v. Scott*, 838 F.3d 1101, 1103 (11th Cir. 2016); *Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525, 528–30 (9th Cir. 2013), *rev'd on other grounds*, *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014); *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 259–62 (3d Cir. 2012); *Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 247–49 (2d Cir. 2011); *Ervin v. OS Rest. Servs.*, 632 F.3d 971, 973–74 (7th Cir. 2011); *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006).

typicality, and adequacy.  Fed. R. Civ. P. 23(a); *Black v. Occidental Petrol. Corp.*, 69 F.4th 1161, 1173 (10th Cir. 2023).  In evaluating a motion for class certification, the Court accepts the plaintiff's substantive allegations as true, but it "need not blindly rely on conclusory allegations of the complaint which parrot Rule 23."  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).  The Court must conduct its own rigorous analysis to determine whether the class meets the elements under a preponderance of the evidence standard.  *Vallario v. Vandehey*, 554 F.3d 1259, 1266–67 (10th Cir. 2009).  The Court may consider the merits "to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *Vallario*, 554 F.3d at 1267.

In addition to Rule 23(a), class certification demands evidentiary proof of at least one of Rule 23(b)'s three provisions.  Plaintiffs assert that they qualify for class certification under Rule 23(b)(3).  Rule 23(b)(3) has two components: (1) predominance, meaning that questions of law or fact common to the class members predominate over any questions affecting only individual members; and (2) superiority, meaning a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Predominance and commonality have significant overlap.  Accordingly, "courts will often treat the application of Rules 23(a)(2) and 23(b)(3) together."  Newberg & Rubenstein on Class Actions § 3:27 (6th Ed. 2024).

**DISCUSSION**

A.  <u>The Proposed Class is Sufficiently Numerous.</u>

Numerosity asks whether "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "There is, however, no set formula to determine if the class is so numerous that it should be certified."  *Rex v. Owens ex rel. State of Okla.*, 585 F.3d 432,

5

436 (10th Cir. 1978); *see, e.g.*, *Ar. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763 (8th Cir. 1971) (certifying class of seventeen to twenty members).

Plaintiffs estimate that the class will consist of 100 current and former drivers. Plaintiffs derive this number from the fact that Defendants employ around 60 to 62 drivers per year and have a turnover rate of 7 to 10 drivers per year. Pls.' Mot. for Class Cert. at 8. Thus, Plaintiffs approximate that, adding the 30 former employees who turned over in the three years preceding this suit to the 60 current employees, there would be around 100 drivers who fall within the class definition. Defendants admit that the underlying numbers are accurate. Defs.' Resp. at 8. Nevertheless, they challenge the final calculation of 100 individuals as a "false assertion" that "directly contradict[s]" the fact that they only employ 60 to 62 employees at any given time." *Id.* Defendants omit the employees who no longer work for them yet remain covered by the three-year statute of limitations without explanation. The Court finds Plaintiffs' arithmetic to be sound.

Defendants then aver that Plaintiffs fail on the numerosity prong because they use speculative estimates and fail to provide concrete evidence of the class size. Defs.' Resp. at 8. Defendants believe this imprecision contravenes the Tenth Circuit's ascertainability requirement, which they characterize as a "sub-requirement" of numerosity. Defendants are correct that, although Rule 23 does also not mention ascertainability, the Tenth Circuit has adopted the "ascertainability test as an implied prerequisite to class certification." *Cline v. Sunoco*, 159 F.4th 1171, 1194 (10th Cir. 2025). A class is ascertainable if the class definition is (1) defined clearly and (2) can be defined by objective criteria rather subjective criteria, such as a person's state of mind. *Id.* at 1196. The party seeking certification must demonstrate that the class is ascertainable using "reasonable—but not perfect—accuracy." *Id.*

Defendants assert that Plaintiffs' class is unascertainable per the holding in *Rex*. *See* Defs.'

Resp. at 7–8 (citing *Rex*, 585 F.3d at 436). The Court finds this analogy to be ill-fitting. In that

case, the Tenth Circuit affirmed the district court's denial of certification on the basis that the

plaintiff offered only the bare assertion that the class would be sufficiently numerous. He failed

to "set forth further allegations or other pleadings demonstrating the truth of his assertion." 585

F.2d at 436. Plaintiffs have provided the Court with far more than a plain statement. They have

included a clear class definition and deposition testimony of the number of truck drivers

Defendants employ. Pls.' Mot. for Class Cert. at 9. This information enables the Court to identify

class members with "reasonably accuracy." *Cline*, 195 F.4th at 1196. The Court concludes that

Plaintiffs' estimate of the class size is reasonable and that a class of 100 individuals is sufficiently

numerous under Rule 23. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)

(finding that proposed class consisting of "100 to 150 members . . . is within the range that

generally satisfies the numerosity requirement").

B.  The Putative Class Members Allege Sufficiently Common Legal Injuries.

"Commonality requires the plaintiff to demonstrate that the class members have suffered

the same injury . . . Their claims must depend upon a common contention—for example, the

assertion of discriminatory bias on the part of the same supervisor. That common contention,

moreover, must be of such a nature that it is capable of class-wide resolution—which means that

the determination of its truth or falsity will resolve an issue that is central to the validity of each

one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011).

"Factual differences, on their own, do not defeat commonality so long as the class-wide proceeding

may "generate common answers apt to drive the resolution of the litigation." *Id.* at 350.

Defendants argue that the proposed class members lack sufficient commonality.

Specifically, Defendants believe that "significant variations in work hours, tasks performed, and compensation structures among drivers underscore the individualized nature of the claims." Defs.' Resp. at 10.[3] Defendants also challenge Plaintiffs' decision to submit "the declaration of a single Plaintiff . . . to meet the rigorous standards required for class certification." *Id.* at 5. Defendants dismiss this evidence as anecdotal and thus inadequate in parallel fashion to the plaintiffs' allegations in *Dukes*.

The facts of *Dukes* are incongruous to the present case. There, the Supreme Court held that class certification was unavailable because the plaintiffs failed to establish that their injuries derived from a uniform policy or practice. The plaintiffs represented a class of 1.5 million current or former employees "who allege[d] that the company discriminated against them on the basis of their sex by denying them equal pay or promotions." *Dukes*, 564 U.S. at 343. Plaintiffs could not identify "any express corporate policy against the advancement of women," instead claiming that "their local managers' discretion over pay and promotions is exercised disproportionately in favor of men." *Id.* at 344. The opposite is true here—Plaintiffs have unequivocally identified a company-wide policy that lies at the core of their injury. Likewise, in *Nez* (which Defendants cite for the same proposition as *Dukes*), the plaintiffs failed to offer evidence suggesting "the existence of a class-wide policy of systematically failing to record time worked." Defs.' Resp. at 11 (analogizing between the present case and *Nez v. Sw. Glass & Glazing, Inc.*, No. 1:15-CV-01041-RJ, 2016 WL 10516171 (D.N.M. Dec. 22, 2016)). Defendants cannot say the same of Plaintiffs' efforts. Defendants' response details the pay and scheduling structure that Plaintiffs challenge,

---

[3] Defendants argue that the class's "variability is further highlighted by Plaintiff Sanchez's repeated use of the word 'average' in his declaration to describe the average hours worked, average loads hauled, and average amount of time required to complete tasks." *Id.* Averages do not undermine commonality. A singular plaintiff might couch his claims in terms of average hours worked and pay received to summarize variations from week to week. Class claims are no different.

conceding that drivers do not receive overtime pay.  *See* Defs.' Resp. at 2–3.  Mr. Sanchez's declaration merely corroborates these facts. Defendants' related concern that Plaintiffs "present no evidence of a policy or practice to improperly deny overtime compensation," is unpersuasive as it goes to the merits their per-haul payment scheme remains open, not its existence.  *See* Defs.' Resp. at 12 (explaining why Defendants are not required to pay truck drivers overtime).

Plaintiffs' overtime claim is premised on Defendants' alleged misclassification of truck drivers as exempt from overtime under NMMWA, i.e. that they uniformly applied a policy to the class members that violated the law's overtime provision.  To support this contention, Plaintiffs included hundreds of pages of exhibits, including pay stubs for numerous TransWood employees, *see* Doc. 35, Exs. 4–6, proving that drivers were paid on a piece-rate basis.  The attached policies indicate that truck drivers performed comparable duties.  *See, e.g.*, Doc. 35, Ex. 14 (instructions for unloading crude oil).  "Using a combination of pay data and hours of service records over the appropriate time period (and capping the work at forty hours per week), the Transwood Drivers regular rate of pay may easily be calculated over "a representative period of time."  Doc. 35 at 34 (citing *Firestone v. S. California Gas Co.*, 219 F.3d 1063, 1068 (9th Cir. 2000)).  Brent Geiger, one of Defendants' corporate representatives, affirmed these contentions.  His deposition testimony revealed that the drivers at the Artesia and Hobbs yards perform the same tasks and are paid under the same scheme.  Geiger Dep. 33:6–17.  This evidence will generate common answers as to whether truck drivers were properly categorized as piecework employees and exempted from overtime pay, a question central to all class members' claims.  *Id.*; *Dukes*, 564 U.S. at 350. Differences in shift hours, tasks, and efficiency do not defeat this finding.  *Devaughn*, 594 F.3d at 1196.  For instance, variations in total overtime hours will alter the total damages a class member receives.  It has no impact on their ability recover on the same basis as any other uncompensated

class member.  *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 798 (10th Cir. 2019) ("The fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification." (citation omitted)).  Plaintiffs' quantum meruit claim can be evaluated using the same set of shared factual circumstances.

Lastly, whether the piecework exception excuses Defendants from paying overtime under the NMMWA is resolvable on a class-wide basis.  The piecework exception applies to employees whose compensation is tied to payments made "per unit" and tethered to a specific job or item, as opposed to payments tethered to hours spent working.  *Armijo v. FedEx Ground Package Sys., Inc.*, 405 F. Supp. 3d 1267, 1276 (D.N.M. 2019).  While Defendants may later affirmatively show that the piecework exception applies to its truck drivers, that exemption will apply equally to all class members since they are all paid using the per-haul system.  The Court therefore finds that the Plaintiffs have demonstrated commonality.

C.  <u>The Named Representatives' Claims Are Typical of the Class Claims.</u>

Typicality requires the plaintiff to demonstrate that the named representatives' claims are typical of the class claims.  Fed. R. Civ. P. 23(a)(3).  Typicality tends to merge with commonality. *Dukes*, 564 U.S. at 350.  And, as with commonality, "differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory."  *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).  The named Plaintiffs' claims are representative of the class: they allege that they (1) worked more than forty hours per week, (2) were not paid overtime, (3) do not fall under the Motor Carrier Act nor piecework exemption, and (4) Defendants were unjustly enriched as a result of this uncompensated labor.  Pls.' Mot. for Class Cert. at 31; Doc. 35 Ex. 2 (Pls.' Compl.).  The named plaintiffs' claims are "not only similar but identical in legal theory to those of the proposed

class." *Brandi-Vanmeter v. MP2 Enters., LLC*, __ F. Supp. 3d __ , 2025 WL 3207222, at *9 (D. Utah Nov. 17, 2025). The typicality requirement is met.

      D.  <u>Class Counsel and the Named Plaintiffs Will Adequately Represent the Interests of the Class.</u>

Adequacy requires that the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Adequacy is intended to protect the due process interests of the class members who, despite their general lack of involvement in the suit, are bound by its judgment. This prong asks (1) whether the named plaintiff and her counsel have any conflicts of interest with other class members, and (2) whether the named plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). The typicality inquiry overlaps with Rule 23(a)(4)'s adequacy requirement, which asks whether the named plaintiffs and counsel have any conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class. *Gulick v. State Farm Mut. Auto. Ins. Co.*, 780 F. Supp. 3d 1169, 1197 (D. Kan. 2025) (first citing *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1219 (10th Cir. 2013); and then citing *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1204 (10th Cir. 2006)).

Defendants do not dispute the adequacy of class counsel, but they do challenge Mr. Sanchez as an adequate representative. Their grounds for this contention are thin. They mostly rely on the fact that he is a former, rather than current, truck driver. Mr. Sanchez's amended declaration states that he will represent the interests of "current and former drivers" and Defendants have not identified a concrete conflict of interest that Mr. Sanchez has with the class. Doc. 52 at 9; Doc. 52, Ex. B. To the contrary, he is equally interested in pursuing this action and potentially

recovering unpaid wages. The Court finds Mr. Sanchez and class counsel to be adequate representatives.

E.    Plaintiffs Have Met Their Burden Under Rule 23(b)(3).

The Court finds that Plaintiffs have demonstrated predominance for the same reasons they have established commonality: the Defendants used a uniform system of compensation for their truck drivers, who performed similar tasks at the Hobbs and Artesia yards, had the same supervisor, and typically worked more than forty hours per week. Plaintiffs' shared theory of liability and comparable employment setting predominate over discrepancies in their available damages. *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014); *Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d 1074, 1084 (D. Colo. 2016).

Plaintiffs must establish that a class action is the superior means of adjudication. Four factors inform this analysis: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). The Court agrees with Plaintiffs that TransWood drivers are unlikely to bring these claims on their own, since the cost of litigation will almost certainly surpass their potential damages. Even if they were motivated to bring suit, one hundred individual suits would strain the court system and the Defendants. The parties have also completed stage one of discovery and there would be little sense in replicating that process for all class members. Class treatment is therefore the superior means of adjudication.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' motion for class certification (Doc. 35) is **GRANTED** as to the NMMWA and quantum meruit claims and **DENIED** as to the FLSA claims. The motion to amend is **GRANTED** (Doc. 48). The Court ORDERS as follows:

1. The Court certifies a class with the following definition:

   > All of Defendants' current and former truck drivers who worked over forty hours in at least one week in New Mexico within the three years preceding July 1, 2021 (the date Plaintiffs filed suit) and were not paid one and one-half times their regular rate of pay for the hours worked in excess of forty hours.

2. Plaintiffs James Acevedo, Nathaniel Cooley, Rosendo Dimas, Kelly Dunn, Alexander Eastwood, Melvin Sanchez, Victor Sanchez, Zach Wier, Jonathan Winckler, and Juston Waltrip are hereby approved as class representatives.

3. Pursuant to Federal Rule of Civil Procedure 23(g), the following law firm is appointed as class counsel:

   > Wallace & Allen, LLP
   > 440 Louisiana, Suite 590
   > Houston, TX 77002
   > (713) 224-1744

4. The parties shall submit a joint proposed class notice by March 12, 2026.

**IT IS SO ORDERED.**

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**

13