**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JUSTON WALTRIP, NATHANIEL
COOLEY, JAMES ACEVEDO, and
MELVIN SANCHEZ, on behalf of
themselves and others similarly situated,

      Plaintiffs,

v.                                    No. 1:24-cv-00672-SMD-KK

TRANSWOOD LOGISTICS, INC.,
TRANSWOOD, INC., and
TRANSWOOD CARRIERS, INC.,

      Defendants.

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR A TEMPORARY
<u>RESTRAINING ORDER</u>**

     **THIS MATTER** is before the Court on Plaintiffs' motion for a temporary restraining order.

Doc. 88 ("Pls.' TRO Mot.").  Defendants responded (Doc. 90 ("Defs.' Resp.")) and Plaintiffs

replied (Doc. 91 ("Pls.' Reply")).  Having considered the motion, Defendants' response, Plaintiffs'

reply, all tendered Exhibits, and the relevant law, the Court **GRANTS** Plaintiffs' request to enjoin

Defendants from retaliating against employees who participate in the underlying class action.  The

Court **RESERVES** ruling on the remainder of Plaintiffs' requests for relief until after the

preliminary injunction hearing.  The temporary restraining order shall be in effect for 14 days.

**BACKGROUND**

     Plaintiffs represent a class of truck drivers employed by Defendants to haul crude oil

throughout New Mexico.  *See* Doc. 47.  The underlying complaint alleges that Defendants failed

to account for time spent on a variety of tasks and thus violated the minimum wage provisions of

the Fair Labor Standards Act and New Mexico Minimum Wage Act.  *Id.*  On February 26, 2026,

the Court certified a Rule 23 class for the New Mexico state law claims. *See* Doc. 80.  Class members received notice of the action in early April of 2026.  Doc. 88, Ex. B.

Plaintiffs are now seeking a temporary restraining order ("TRO"). They allege that following certification, supervisors discouraged drivers from participating in the suit and in violation of the FLSA's anti-retaliation protection. Plaintiffs attach the declarations of Zachary Wier and Javier Martinez. Mr. Wier, who was previously a TransWood driver, states that when he inquired about returning to TransWood Carriers, TransWood General Manager Chris Perez told him that "as a precondition [he] would have to drop out of the case against TransWood and withdraw [his] wage claims."  Doc. 88, Ex. A ("Wier Decl.") at 1.  Defendants responded with a declaration from Perez, who asserts that he never told Wier he would have to withdraw himself from the lawsuit to be eligible for future employment at TransWood.  Doc. 90, Ex. 1 ("Perez Decl.") at 1.  Plaintiffs then attached a second declaration from Wier in their reply.  Doc. 91, Ex. E ("Second Wier Decl.") at 1.  He maintains that Perez informed him that if he exited the lawsuit, he might considering rehiring Wier and that the statements made in his original declaration are correct.  *Id.*

Martinez has been working as a truck driver at TransWood for the past year and a half. Doc. 91, Ex. D at 1 ("Martinez Decl.").  Martinez claims that TransWood General Manager Chris Perez terminated him on April 29, 2026.  *Id.*  Martinez was fired one day after Defendants filed their response.  At this termination meeting, Perez allegedly complained that the lawsuit was creating "many problems" and "questioned why [the drivers] are suing them if they are doing things correctly."  *Id.*  "He further stated that there are five drivers who want to return to work, but he refuses to allow them to return because they did not give two weeks' notice and because they are part of the lawsuit."  *Id.*

2

Plaintiffs ask for the following relief:

(1) An order enjoining Defendants from terminating or threatening to terminate or otherwise retaliating against current and former employees based on the belief that they participated in this case;

(2) Requiring Defendants to permit a representative of the Plaintiffs, within one week of the entry of the Court's Order, to read aloud during the employees' paid working hours the attached anti-retaliation statement (attached to the Motion as Exhibit C) to all class members or persons receiving notice and employed by Defendants, informing them of their right to participate in this case free from all retaliation or threats of retaliation or intimidation by Defendants;

(3) Requiring Defendants to post in a conspicuous location at each work site a hard copy of the attached anti-retaliation statement (attached to the Motion as Exhibit C), and permitting Plaintiffs and Class counsel to disseminate the notice in the same manner as class notice;

(4) Requiring Defendants to provide Plaintiffs and the Class Counsel with a complete list of all employees employed by Defendants who have communication with Plaintiffs or the Class regarding this suit and written documentation of efforts to preserve all such communications.

Pls.' TRO Mot. at 13. Plaintiffs do not specify how long they would like the TRO to remain in place. For purposes of this order, the Court only considers the propriety of a fourteen-day injunction. "After fourteen days, either lapses or becomes a preliminary injunction." *Tooele Cnty. v. United States*, 820 F.3d 1183, 1186 (10th Cir. 2016). Plaintiffs rely almost exclusively on declarations to support their motion. However, the Tenth Circuit has instructed that "a preliminary injunction should not issue on the basis of affidavits alone." *Lane v. Buckley*, 643 Fed. App'x. 686, 689 (10th Cir. 2016); *see, e.g.*, *N.M. Dep't of Game & Fish v. United States Dep't of the Interior*, 854 F.3d 1236, 1253–54 (10th Cir. 2017) (finding district court abused its discretion in granting preliminary injunction where a "declaration [was] all the district court had before it when it found the State had established it would suffer irreparable harm"). The Court therefore will not extend relief beyond 14 days until after a preliminary injunction hearing is held.

3

**LEGAL STANDARD**

A temporary restraining order is intended to preserve the status quo before a final decision on the merits. *Colo. Motor Carriers Ass'n v. Town of Vail*, 153 F.4th 1052, 1065 (10th Cir. 2025). The status quo is defined as "the last peaceable uncontested status existing between the parties before the dispute developed . . ." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 798 n.3 (10th Cir. 2019). To obtain a temporary restraining order, the movant must show: (1) they are likely to succeed on the merits; (2) they would likely suffer irreparable injury without the injunction; (3) the balance of equities favors them; and (4) an injunction would serve the public interest. *Populist Party v. Herschler*, 746 F.2d 656, 658 (10th Cir. 1984).

**DISCUSSION**

I.      Whether Plaintiffs are Likely to Succeed on Their Retaliation Claim.

The FLSA prohibits an employer from discharging or otherwise discriminating against any employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3). In parallel, the NMMWA prohibits "an employer or any other person to discharge, demote, deny promotion to or in any other way discriminate against a person in the terms or conditions of employment in retaliation for the person asserting a claim or right pursuant to the Minimum Wage Act or assisting another person to do so or for informing another person about employment rights." N.M. Stat. § 50-4-26.1 (2025). The Court relies on federal precedent regarding the FLSA's retaliation provision in evaluating the propriety of Plaintiffs' state law claim. *Olivo v. Crawford Chevrolet, Inc.*, 2012 WL 12897385, at *4 (D.N.M. 2012).

FLSA retaliation claims follow the *McDonnell Douglas* burden-shifting framework. *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004). First, the plaintiff must show that: (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse

action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action. *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997). If those demonstrations are made, the employer can "offer a legitimate non-retaliatory reason for the adverse employment action." *Pacheco*, 365 F.3d at 1207. Then the burden returns to the plaintiff to "show genuine issues of material fact exist regarding whether the employer's proffered reason is unworthy of credence." *Id.*

Plaintiffs state a prima facie case of retaliation. It is undisputed that class members are engaging in protected activity by suing for violations of the FLSA and NMMWAs' overtime provisions. Second, the submitted declarations indicate two distinct forms of retaliation: (1) refusal to rehire and (2) termination. Although Defendants do not currently employ Wier, their purported discrimination against him in hiring is a form of retaliation. *Utter v. Colclazier*, 714 F. App'x 872, 884 (10th Cir. 2017) ("[I]t is clearly established that failure to renew a contract or to rehire an employee constitutes adverse action."); *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 320 (3d Cir. 2008) ("[F]ailure to rehire can constitute an adverse employment action."). Martinez has likewise suffered an adverse employment action and proffered facts sufficient to infer a causal connection between his termination and the protected activity. The Act explicitly identifies discharge as a form of retaliation. 29 U.S.C. § 215(a)(3). The Tenth Circuit has explained that "[w]hen the 'immediate cause or motivating factor of a discharge is the employee's assertion of statutory rights, the discharge is discriminatory under § 215(a)(3) whether or not other grounds for discharge exist.'" *Conner*, 121 F.3d at 1394. Martinez claims that Perez "did not provide [him] with a clear reason for [his] termination." Martinez Decl. at 1. This accusation, combined with the propinquity between class notice and Martinez's termination, shows

a potential causal connection between the protected activity and the retaliatory conduct.  Although Defendants have not had the opportunity to reply to the allegations made in Martinez's declaration, the Court finds that they are sufficiently specific for a prima facia case.

Defendants argue that Plaintiffs' evidence cannot sustain a retaliation claim.  They note that although Plaintiffs assert Perez "made similar coercive statements to other unnamed class members," Plaintiffs have failed to substantiate those accusations with declarations because "none of these purported class members are willing to submit a declaration or otherwise come forward." Defs.' Resp. at 2.  Employees' reticence to provide declarations does not undermine a retaliation claim.  If anything, it supports it.  Defendants also do not submit persuasive evidence contradicting Plaintiffs' claims.  Their response includes one declaration which simply denies the allegations outlined in Wier's declaration.  *See id.* at 7 ("Perez also expressly denies Plaintiffs' broader accusations and maintains that he has not told any driver that the lawsuit would have "consequences").  Though Defendants allude to other steps they have taken to prevent retaliation, such as providing Perez "with 'clear instructions' regarding communications with drivers and applicants in light of the litigation," they do not include evidence of those precautionary measures. *Id.* at 3.  Similarly, Defendants do not articulate an alternative basis for refusing to rehire Wier. They admit that Wier reapplied to TransWood in January of 2025 and that he was not given the position.  *Id.*  As to why that rejection was not retaliatory, Defendants merely refute everything Wier alleges.  "Perez did not make any retaliatory threats or condition employment on withdrawal from this lawsuit." *Id.* at 7.  "Perez states unequivocally that he did not tell Mr. Wier–or any other Transwood drivers–that employment or reemployment was conditioned on dropping out of this lawsuit or withdrawing wage claims." *Id.*

None of this is "a legitimate non-retaliatory reason for the adverse employment action."

*Pacheco*, 365 F.3d at 1206.  Defendants instead do the inverse of what *McDonnell Douglas* demands—they focus on establishing that Perez did not possess a retaliatory motive.  But a retaliatory motive is not fatal to an employer's defense.  To the contrary, the employer "need not prove the absence of retaliatory motive; rather, the employer need only produce evidence that would dispel the inference of retaliation.  *Pacheco*, 365 F.3d at 1206–07.  Defendants have failed to do so here.

Still, the Court agrees that Wier's declaration is vague; it does not specify the date of his conversation with Perez, mention any direct quotes, or explain what has taken place since January 2025.  Wier Decl. at 1.  Defendants highlighted these missing details in their response, but Wier's second declaration was no more informative than the first.  *See* Defs.' Resp. at 7; Second Wier Decl. at 1. Wier's and Perez's declarations amount to one person's account versus another's, with no additional evidence to discern which is the more accurate story.  On that record alone, Plaintiffs' motion would be a much closer call.  *N.M. Dep't of Game & Fish*, 854 F.3d at 1253–54.

But Martinez's declaration tips the scales in Plaintiffs' favor.  For one, it contradicts Defendants' averment that there is no urgency in securing relief.  Defs.' Resp. at 1.  Martinez claims that Perez is refusing to rehire drivers who were participating in the suit.  Martinez Decl. at 1.  This allegation gives the Court great pause.  It indicates that there may be active retaliation occurring shortly after employees received class notice. Martinez's declaration also corroborates Wier's assertion that Perez is refusing to hire drivers who join the suit.  The Court finds that Plaintiffs have established a sufficient likelihood of success on the merits to enjoin Defendants from the alleged misconduct for 14 days.

II.    Whether Plaintiffs Are Likely to Suffer Irreparable Harm Absent a Preliminary Injunction.

"What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating,

a monetary remedy after a full trial." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (10th Cir. 2019).  Plaintiffs' potential harm cannot be remedied through monetary damages.  If Defendants intimidate employees into withdrawing from this suit, they will forego the opportunity to assert their state and federal rights.  Excluding themselves will in turn harm those who do join; Plaintiffs will be impeded from obtaining available evidence from absent class members and will be less likely to prevail at trial.  *Scalia v. Unforgettable Coatings, Inc.*, 455 F. Supp. 3d 987, 992 (D. Nev. 2020) ("Plaintiff will not be able to adequately investigate the alleged misconduct and will likely suffer irreparable injury as a result.").   As noted above, Martinez's declaration suggests that these injuries may be imminent, especially given that Martinez's termination may chill other employees from exercising their rights.  The Second Circuit recognized this risk in *Holt v. Continental Group, Inc.*, 708 F.2d 87 (2d Cir. 1983).  "A retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights . . . or from providing testimony for the plaintiff in [his] effort to protect [his] own rights.  These risks may be found to constitute irreparable injury."  *Id.* at 91.  *See also Garcia v. Lawn*, 805 F.2d 1400, 1405 (9th Cir. 1986) ("[C]ourts will more readily grant [injunctive] relief where allegations of retaliation are involved, because such conduct is likely to cause irreparable harm to the public interest in enforcing the law by deterring others from filing charges." (citation omitted)); *cf. Pye ex rel. N.L.R.B. v. Excel Case Ready*, 238 F.3d 69, 75 (1st Cir. 2001) ("Moreover, the fear of employer retaliation after the firing of union supporters is exactly the 'irreparable harm' contemplated by § 10(j).").  Plaintiffs have established a likely risk of irreparable harm.

III.    Whether the Balance of Hardships Favors Plaintiffs.

"To be entitled to a preliminary injunction, the movant has the burden of showing that the threatened injury to the movant outweighs the injury to the other party under the preliminary

injunction." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003).  In considering the balance of the hardships, the Court does not scrutinize the more specific of Plaintiffs' enumerated forms of relief.  Plaintiffs ask for Defendants to permit a representative to come on site and read aloud employees' rights, for the Court to require Defendants to "post in a conspicuous location at each work site a hard copy of the attached anti-retaliation statement," and for Defendants to turn over complete list of all employees employed by Defendants who have communicated with Plaintiffs or class members.  Pls.' TRO Mot. at 13.  These requests introduce a conflict between the parties' interests and should not be granted prior to a hearing.  The Court only analyzes whether restraining Defendants from using retaliatory tactics against employees saddles them with any hardship.  The Court finds it does not.

For Plaintiffs, retaliation threatens their legal rights and livelihood.  For Defendants, the TRO will enjoin them from what the law already prohibits, and what they may already be doing— permit employees to exercise their statutory rights without suffering an adverse employment action.  Defendants have "no legitimate interest in threatening, intimidating, or otherwise retaliating against Plaintiffs in direct contravention of their rights under the FLSA." *Scalia*, 455 F. Supp. 3d at 992; *see also New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 662 n.38 (2d Cir. 2015) ("Certainly, courts do not consider the harm a party suffers from being prevented from violating the law."); *Volasco Prods. Co. v. Lloyd A. Fry Roofing Co.*, 346 F.2d 661, 667 (6th Cir. 1965) ("If the defendant abides by the law, it cannot be injured by the injunction.").  The balance of the hardships decidedly favors Plaintiffs.  Granting this limited relief will adequately protect class members' legal rights for the 14-day period.

IV.    Whether Granting the Injunction Will Further the Public Interest.

Lastly, the FLSA and NMMWAs' anti-retaliation provisions further the public interest. These remedial statutes are intended to benefit low-wage workers, to protect employees from

coercive employer tactics, and to offer a path to relief if those rights are violated. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) ("The Act seeks to prohibit "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."). Safeguarding Plaintiffs from employer retaliation not only benefits them and their fellow class members, but the public at large. "For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960).

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order (Doc. 88) is **GRANTED** as to the following request for relief:

(1) Defendants are hereby enjoined from terminating or threatening to terminate, or retaliating, or discriminating in any way, against current and former employees of Defendants, based on Defendants' belief that they participated in this case.

The relief hereby granted shall be enforceable for **14 days** from entry of this order.

**IT IS FURTHER ORDERED** that the parties shall virtually appear before the Court on **May 18, 2026** at **1:00 pm** to be heard on whether a final and appealable preliminary injunction is appropriate. The Cout will provide information on how to access the hearing in the docket.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**